United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSBOW TECHNOLOGY, INC., | No. C 03-4360 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS YUNCHUN YANG** |
| v. | |
| YH TECHNOLOGY, YUNCHUN YANG, YI YANG, | |
| Defendants. / | |

On August 3, 2007, the Court heard argument on plaintiff's motion to dismiss Yunchun Yang. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiff's motion.

**BACKGROUND**

The patent at issue in this case, number 6,421,622 B1 ("the '622 patent"), describes a method and a system for determining the attitude[1] of an accelerating object exclusively from acceleration and angular rate. The patent issued on July 16, 2002, and was thereafter assigned to plaintiff Crossbow Technology Inc. ("Crossbow").

Crossbow filed suit under the '622 patent in 2003, claiming that defendants – YH Technology, a sole proprietorship, Yi Yang, its owner, and Yunchun Yang, her husband – were infringing the patent. Defendants answered and filed counterclaims asserting non-infringement and invalidity of the patent.

---

[1] "Attitude," as used in this context, refers to an object's orientation relative to a reference line. The term is frequently used in the aviation context in reference to the orientation of an aircraft's pitch (whether the nose is pointed up or down) and roll (whether the wings are tilted left or right).

At the first case management conference, defendants disclosed what would be their primary defense to this action – that the Court lacked subject matter jurisdiction because defendants had never made, sold, or offered for sale any infringing product in the United States. *See* January 23, 2005, Joint Case Mgmt. Statement, at 2-3. Defendants claimed that Crossbow had the wrong defendants, and that the proper defendant was Yunhai Science and Technology Co., Ltd., a Chinese corporation located in Beijing, with which defendants had no legal affiliation.

In light of the dispute over whether any infringing actions could be attributed to defendants, the Court bifurcated the case into two stages. The first stage was to involve "issues unrelated to the patent at issue, most importantly whether defendants made, used, offered to sell, sold, or imported potentially infringing products in the United States." Schumann Decl., Exh. 1. In the second stage, the parties would address "whether or not those products actually infringe a valid patent." *Id.*

On September 6, 2006, the Court issued a ruling on the first stage, finding that Crossbow had established only that one defendant, Yunchun Yang, could be held liable for his work in adapting the YH-8000 device, and for exporting software to YH China. *See* Order Re: Summary Judgment, at 13-14. Consequently, Crossbow moved to dismiss defendants Yi Yang and YH Technology. On January 23, 2007, this Court issued an order dismissing defendants Yi Yang and YH Technology, including their counterclaims, from the action. *See* Order Granting Plaintiff's Motion to Dismss Yi Yang and YH Technology, at 4-6. On April 30, 2007, the United States Supreme Court issued its decision in *Microsoft Corp. v. AT&T Corp.*, --- U.S. ---, 127 S. Ct. 1746 (2007).[2] In light of that decision, Crossbow has filed a covenant not to sue Yunchun Yang, and now moves to dismiss its claims with prejudice, and dismiss Yunchun Yang's counterclaims without prejudice.

**LEGAL STANDARD**

"It is a fundamental principle that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither

---

[2] The *Microsoft* case held that a company is not liable pursuant to 35 U.S.C. 271(f) for developing software in the United States and exporting it to a foreign country to be copied and incorporated into an infringing product. 127 S. Ct. at 1753-54.

disregarded nor evaded." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Intern. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation marks omitted). Accordingly, the burden rests on the party asserting federal subject matter jurisdiction to prove its existence. *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Not only must there ben an actual controversy between interested parties, the "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The Declaratory Judgment Act confers "unique and substantial discretion" upon district courts "in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

**DISCUSSION**

**I.    The *MedImmune* and *Nucleonics* Decisions**

Yunchun Yang argues that the Supreme Court decision in *MedImmune, Inc. v. Genetech, Inc.*, --- U.S. ---, 127 S. Ct. 764 (2007), revoked the Federal Circuit's "reasonable apprehension" test in *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed Cir. 1995) (holding that a covenant not to sue is sufficient to divest the court of subject matter jurisdiction). Therefore, Yang argues, Crossbow's covenant not to sue is insufficient to divest the Court of subject matter jurisdiction. In response, Crossbow points to the Federal Circuit's recent decision in *Benitec Australia, Ltd. v. Nucleonics, Inc.*, --- F.3d ---, 2007 WL 2069646 (Fed. Cir. July 20, 2007) to show that *Super Sack* remains essentially intact despite a change in the legal standard.[3]

A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of showing an actual controversy:

---

[3] The Federal Circuit's decision in *Nucleonics* was issued on July 20, 2007, the same day that Yunchun Yang submitted his opposition to the pending motion.

> Our decisions have required that the dispute be definite and concrete, touching the legal relations of the parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune*, 127 S. Ct. at 771 (citing *Maryland Casualty Co v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Prior to *MedImmune*, the courts applied a two-part test for determining subject matter jurisdiction in a declaratory judgment patent action:

> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Super Sack*, 57 F.3d at 1058 (citing *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993)). However, the Federal Circuit subsequently acknowledged that the "Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test." *SanDisk Corp. v. STMicroelectronics Inc.*, 480 F.3d 1372, 1380 (Fed Cir. 2007); *see also Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007). The Federal Circuit's decision in *Nucleonics*, however, clarifies that a covenant not to sue is still sufficient to divest a trial court of subject matter jurisdiction, even under the new legal standard.

In *Nucleonics*, the plaintiff filed for patent infringement and the defendant responded with declaratory counterclaims of invalidity and unenforceability. 2007 WL 2069646 at *2. After the Supreme Court issued its decision in *Merck KgaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193 (2005), the plaintiff sought dismissal because it had no viable infringement claims against defendant. *Id.* In response, the defendant argued that the court maintained jurisdiction over the matter because the defendant intended to expand its technology to cover products that would be allegedly infringing. *Id.* at *7. The district court dismissed both the complaint and counterclaims without prejudice. *Id.* at *2. During the appeal proceedings, the plaintiff stipulated that it "covenants and promises not to sue [defendant] for patent infringement arising from activities and/or products occurring on or before the date dismissal was entered in this action-September 29, 2005." *Id.*

Applying the *MedImmune* standard, the Federal Circuit upheld the dismissal of the defendant's

4

counterclaims for lack of jurisdiction, on the ground that there was no "substantial controversy, between [plaintiff and defendant], of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at *8. With regard to defendant's future plans to engage in allegedly infringing activities, the court concluded that the defendant "has not shown that its discussions [regarding expansion] into [potentially infringing] products meet the immediacy and reality requirement of *MedImmune*." *Id.* at *7. The circuit court held:

> In the instant case, [plaintiff] made its covenant and sought dismissal of its infringement claim after it concluded that the *Merck* decision precluded an infringement claim based upon the activities of [defendant] on which [plaintiff] had instituted its suit. Under these circumstances, there is no controversy between the parties concerning the infringement by [defendant].

*Id.* at *6.

*Nucleonics* fits the fact pattern of the present case, and the Court, therefore, must dismiss Yunchun Yang's declaratory judgment counterclaims without prejudice. As in *Nucleonics*, Crossbow sought dismissal after a Supreme Court ruling indicated there were fewer viable infringement claims, and Crossbow granted Yunchun Yang a covenant not to sue. Similar to the defendant in *Nucleonics*, which sought to expand its technology to cover products that would be allegedly infringing, Yunchun Yang also contends that he plans to engage in potentially infringing activities because his career is in the general field of the '622 patent. Though the facts appear to fit *Nucleonics* squarely on point, the Court will explore two central issues in greater detail: (1) whether Crossbow's covenant not to sue is sufficient to divest this Court of jurisdiction, and (2) whether other threats in this case constitute an "actual controversy" for this Court to maintain jurisdiction.

**II.      Crossbow's Covenant Not to Sue**

Yunchun Yang alleges that Crossbow's covenant not to sue is meaningless because it fails to address all the products and systems at issue in this case. More specifically, Yunchun Yang claims that the covenant fails to account for systems made from products that determine attitude, products listed

5

in the complaint, and products asserted in settlement discussions.[4] The declaration of David Schumann in support of Crossbow's motion to dismiss states, in pertinent part:

> Crossbow Technology, Inc. hereby unconditionally agrees not to sue defendant Yunchun Yang for infringement as to any claim of U.S. Patent No. 6,421,622 based upon Yunchun Yang's manufacture, development, design, marketing, licensing, distributing, offering for sale, or selling the Crossbow Technology IMU-400, KVH Industries RA2030, KVH Industries RD2030, YH 5000/5100 IMU, YH-7000 IMU, and YH-8000 as they exist today or have existed in the past.

Schumann Decl. ¶ 6.

This covenant not to sue is not as broad as the covenant in *Nucleonics*, which stipulated that the plaintiff would not sue for infringement activities or products occurring on or before the date of dismissal. *See* 2007 WL 2069646 at *2. However, the covenant in this case is exhaustive of all potentially infringing products that Crossbow may sue for. First, the list of products mentioned in the declaration covers all of the products identified by defendants as products they had designed, marketed, licensed, offered for sale, and/or sold in the United States on or after June 1998. *See* Schumann Decl., Ex. A. Crossbow has thus covenanted not to sue Yunchun Yang for past or current infringement of patent '622 by any of his products. During oral argument, Crossbow assured the Court that it had no information or intent to sue Yunchun Yang on the accused products, such as the YH-9600. Moreover, this Court ordered on September 6, 2006, that Yunchuan Yang may only be liable for his work in adapting the YH-8000 device and for exporting software to YH China. *See* Order Re: Summary Judgment, at 13-14. This Court, therefore, lacks subject matter jurisdiction regarding all other products listed in the complaint because this Court has already found that they are not potentially infringing products made, used, offered to sell, sold, or imported in the United States. Even then, Crossbow's proposed dismissal is with prejudice, and consequently, Crossbow may not reassert claims of infringement regarding the '622 patent against Yunchun Yang. This covenant not to sue, therefore, weighs strongly against the existence of a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment."

---

[4] This includes YH-5000 VG, YH-7000 VG, YH-3000, YH-3300, YH-4000, YH-5000 AHRS, YH-6000 MGPSA, YH-8600 INS, YH-8800 INS, YH-9000 GI, YH-9600 GI, YH-8000, and systems DMU-6, DMU-VG, DMU-6X, DMU-VGX, DMU-AHRS, DMU-HDX, DMU-FOG, DMU-MALAT, VG300, VG400, AHRS300, AHRS400, AHRS500, VG600, VG600MA, VG700, VG700MA, and NAV420.

6

1 Yunchun Yang also argues that under *SanDisk*, Crossbow's covenant not to sue does not moot 2 the actual controversy created by Crossbow's own acts. In *SanDisk*, the Federal Circuit found the 3 declaratory judgment action by the plaintiff to be justiciable under Article III despite a promise not sue 4 by the defendant. *See* 480 F.3d at 1383. Specifically, at a licensing meeting, although defendant stated 5 that it had "absolutely no plan whatsoever to sue [plaintiff]," the defendant's vice president of 6 intellectual property "sought a right to a royalty under its patents based on specific, identified activity 7 by [plaintiff]." *Id.* at 1382. The circuit court held: "We decline to hold that [defendant's] statement 8 that [defendant] would not sue [plaintiff] eliminates the justiciable controversy created by [defendant's] 9 actions, because [defendant] has engaged in a course of conduct that shows a preparedness and 10 willingness to enforce its patent rights." *Id.* at 1382-83. The court found defendant "engaging in the 11 kinds of 'extra-judicial patent enforcement with scare-the-customer-and-run tactics' that the Declaratory 12 Judgment Act was intended to obviate." *Id.* (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 13 846 F.2d at 731, 735 (Fed. Cir. 1988)).

14 *SanDisk* is distinguishable from the case at hand. Unlike an oral promise made at a business 15 meeting, Crossbow's covenant not to sue was in writing and filed concurrently with the dismissal of 16 Crossbow's claims and Yunchun Yang's counterclaims. Regardless of Crossbow's past pursuit of 17 infringement claims, the covenant not to sue submitted along with this motion unequivocally establishes 18 that Crossbow will not pursue claims for infringement of the '622 patent against Yunchun Yang. 19 Indeed, *Nucleonics* distinguished *SanDisk* on the same grounds, that a statement of intent not to sue 20 during negotiations is not the same as a covenant not to sue in the future for infringement. *See* 2007 WL 21 2069646 at *6. Therefore, the only remaining question is whether there exists an extant actual 22 controversy beyond the scope of Crossbow's covenant not to sue that requires the attention of a 23 declaratory judgment.

25 **III.    Actual Controversy**

26 Yunchun Yang argues that because Crossbow owns a family of patents related to the '622 patent,

7

an actual controversy exists due to an uncertainty over Yunchun Yang's legal rights.[5] In other words, Crossbow could still sue Yunchun Yang on these related patents, which have not been part of this lawsuit, even if this lawsuit is dismissed.

In *Teva*, plaintiff brought a declaratory judgment action on four method patents for noninfringement and invalidity after being sued on the underlying composition patent. 482 F.3d at 1335. The action was brought under a statute entitled "civil action to obtain patent certainty." *Id.* The statute encourages prompt resolution of patent disputes by permitting declaratory judgment actions for pharmaceutical patents if no lawsuit is filed for them within 45 days. *See id.* at 1342. The defendant moved to dismiss for lack of subject matter jurisdiction. *Id.* Instead of leaving the door open to future infringement actions on the four patents, the circuit court upheld the declaratory judgment action and concluded that the defendant's unasserted patent rights on a related patent contributed to establishing an actual controversy. *Id.* at 1345. The court elaborated: "If [plaintiff] is successful in defending the '937 infringement suit, it remains subject to four additional infringement actions by [defendant] . . . This threat of protracted litigation creates a present and real harm that is a relevant circumstance in finding whether a justiciable controversy exists." *Id.*

However, *Teva* is distinguishable from the case at bar. First, the *Teva* case involved pharmaceutical patents that were governed by a different statute which encouraged prompt resolution of patent disputes. Yunchun Yang does not rely on any similar statute. Second, the party seeking dismissal in *Teva* maintained its current infringement claim regarding the underlying composition patent, while in this case, Crossbow both dismissed its infringement claim and covenanted not to sue. Third, the plaintiff in *Teva* filed a declaratory judgment action against the four related method patents. However, Yunchun Yang only filed a declaratory judgment action against the '622 patent and not the related patents. Therefore, this case only concerns the '622 patent. More importantly, the circuit court in *Teva* admitted: "We believe that the only circumstance in which a case or controversy might not exist would arise in the rare circumstance in which the patent owner and brand drug company have given the generic applicant a covenant not to sue, or otherwise formally acknowledge that the generic applicant's

---

[5] Crossbow's patents 6,647,352; 6,853,947; 7,216,055; and U.S. Patent Application Serial Number 11/446,063 (still pending) all claim priority to the '622 patent.

1 drug does not infringe." *Id.* at 1233. This case presents such a circumstance. Therefore, despite the
2 existence of related patents to the '622 patent, this Court finds that the covenant not to sue is sufficient
3 to remove any "actual controversy" from this case.

4 Yunchun Yang finally argues that an actual controversy exists because Crossbow has accused
5 Yunchun Yang of marketing "knock-off" products. Furthermore, Yunchun Yang accuses Crossbow of
6 misleading the Court with its interpretation of the *Microsoft* case, accuses Crossbow's CEO of
7 unjustifiably avoiding deposition, and accuses Crossbow of averting settlement. The Court disagrees
8 that these actions constitute an actual controversy. First, the marketing of "knock-off" products has
9 been addressed by Crossbow's covenant not to sue, which is exhaustive of all potentially infringing
10 products that Crossbow may sue for, and the residual possibility of a future infringement suit based on
11 future acts is simply too speculative a basis for jurisdiction over Yunchun Yang's counterclaim.
12 Second, regardless of Crossbow's motives throughout the pretrial process, Crossbow's covenant not to
13 sue is binding, and sufficiently eliminates any actual controversy between the parties.

14 This Court acknowledges that the legal standard regarding subject matter jurisdiction over a
15 declaratory judgment action has changed since its previous order dismissing Yi Yang and YH
16 Technology. Though the appropriate standard changed from a "reasonable apprehension" test to an
17 "actual controversy" test, the result in *Super Sack* and this Court's previous order does not change.
18 Given the substantial weight accorded to *Nucleonics*, Crossbow's covenant not to sue, and the lack of
19 any other actual controversy, the Court dismisses Yunchun Yang's declaratory judgment counterclaims
20 for lack of subject matter jurisdiction.

27 ///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court GRANTS plaintiff's motion to dismiss the claims against, and counterclaims of, defendant Yunchun Yang.  (Docket No. 183)

**IT IS SO ORDERED.**

Dated: August 21, 2007

SUSAN ILLSTON
United States District Judge